416 Main Street Corporation v. Commissioner.
416 Main St. Corp. v. Commissioner
Docket No. 110458.
United States Tax Court
1943 Tax Ct. Memo LEXIS 161; 2 T.C.M. (CCH) 579; T.C.M. (RIA) 43375; August 6, 1943
*161 Petitioner corporation had a corporate existence separate from the shareholders and was used for business purposes during the taxable years. George M. Spence, Esq., First Nat'l Bank Bldg., Johnstown, Pa., for the petitioner. Paul E. Waring, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioner's taxes as follows: Excess-
Income
profits
Year
Tax
Penalty
Tax
Penalty
1935
$ 855.59
$42.78
$ 311.12
$15.56
1936
921.66
46.08
885.52
44.28
1937
1,590.90
79.55
1,753.14
87.60
1938
470.08
1939
98.66
The issues are: 1. Is the petitioner liable as a separate corporate entity for income and excessprofits taxes or are such taxes properly chargeable only to its shareholders? 2. Is the petitioner liable for a 5 per cent negligence penalty for the years 1935, 1936 and 1937? Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. The material portions of these facts are substantially as follows: The petitioner is a corporation organized under the laws of Pennsylvania, with its principal office in Johnstown, Pennsylvania. *162 It filed its income tax returns for the taxable years with the collector of internal revenue for the 23rd district of Pennsylvania. On February 20, 1913, John Thomas, Sr. and George A. Hager purchased a parcel of real estate in Johnstown, Pennsylvania, known as 416 Main Street, on which property was a church building fronting on Main Street and a parsonage on Lincoln Street. During 1913 the church building was remodeled into a theatre, with small storerooms on each side of the theatre entrance and offices above the storerooms and theatre entrance. The owners then leased the theatre and store and office space and collected the rentals therefrom. On December 16, 1913 John Thomas, Sr. conveyed his undivided one-half interest in the property to his seven children, William R. Thomas, James P. Thomas, Harry D. Thomas, Warren B. Thomas, Charles B. Thomas, John Thomas, Jr., and Katharine Kumler. On June 24, 1915 George A. Hager died intestate. His three children Harry V. L. Hager, Frank C. Hager and Auna Hager (now Auna Hinchman) thereupon acquired his interest in the property. On April 15, 1917 William R. Thomas, as trustee, Harry V. L. Hager, Frank C. Hager, and Frank Howard, guardian *163 of Auna Hager, leased the theatre to George Panagotacos. On October 25, 1917 the owners executed a new lease therefor to Panagotacos for a ten-year term beginning April 18, 1918, and ending April 18, 1928. On November 17, 1917 Harry V. L. Hager, Frank C. Hager and Frank Howard, guardian of Auna Hager, gave Panagotacos an option to purchase their undivided one-half interest in the property at any time prior to April 1, 1923. On January 24, 1923 Panagotacos notified the optioners that he exercised his right of option and demanded a deed for their interest. He made no further demand for the deed but remained in possession of the property until April 18, 1928, as provided in his lease. By deeds dated February 18, 1924, June 14, 1924, December 20, 1924, and April 7, 1925, Frank C. Hager conveyed to Harry V. L. Hager his entire one-sixth interest in the property for $44,000. On July 16, 1925 Harry V. L. Hager and Auna Hager Hinchman brought suit in the Court of Common Pleas of Cambria County against Panagotacos for the cancellation of the option agreement of November 17, 1917. On July 26, 1927 the said court found the agreement valid as between Panagotacos and Harry V. L. Hager but void *164 as between Panagotacos and Auna Hager Hinchman, and decreed that Hager should execute a deed to Panagotacos upon the payment of $81,400 or should pay to Panagotacos $101,705.83 for the cancellation of the agreement. On June 7, 1930, following further hearings, the court reduced the amount to be paid for the cancellation. On November 10, 1930 the Court of Common Pleas ordered the cancellation of the option agreement as to Auna Hager Hinchman. On January 31, 1931 Panagotacos assigned to Harry V. L. Hager all of his rights under the November 17, 1917 agreement. On February 12, 1927 Warren B. Thomas conveyed his undivided one-fourteenth interest in the property to the Cramer Coal, Coke and Stone Company, as collateral for a loan. On October 5, 1929 James P. Thomas died testate, leaving his undivided one-fourteenth interest in the property to his son, Philip E. Thomas. During the period from 1913 to 1915, inclusive, George A. Hager actively managed the property for himself and his co-owners. Following the death of George A. Hager on June 24, 1915 the property was managed by Harry V. L. Hager and William R. Thomas until March 4, 1931. From March 4, 1931 to August 18, 1931 the property *165 was managed by Harry V. L. Hager and John Thomas, Jr. On June 4, 1931 record title to the property was vested in the following persons as tenants in common, with the interest set forth opposite their respective names: Undivided
Owners
Interest
Harry V. L. Hager
1/3
Auna Hager Hinchman
1/6
William R. Thomas
1/14
Philip E. Thomas
1/14
Harry D. Thomas
1/14
Cramer Coal, Coke and Stone Co.
1/14
Charles B. Thomas
1/14
John Thomas, Jr.
1/14
Katharine Kumler
1/14
On June 4, 1931 Harry V. L. Hager and John Thomas, Jr. made application to the Governor of the Commonwealth of Pennsylvania for the formation of a corporation "for the purpose of buying, selling, leasing and otherwise dealing in real estate," to be known as 416 Main Street Corporation and to be organized with 84 shares of no par value stock of a stated capital of $8,400. The subscribers to the stock were as follows: William R. Thomas
6 shares
Harry D. Thomas
6 shares
Charles B. Thomas
6 shares
John Thomas, Jr.
12 shares
Philip E. Thomas
6 shares
Katharine T. Kumler
6 shares
Auna Hager Hinchman
14 shares
Harry V. L. Hager
28 shares On June 18, 1931 the Governor of Pennsylvania issued Letters *166 Patent to the petitioner. On August 18, 1931 the owners of the property conveyed it to the petitioner. The deed was signed by all parties in interest and was delivered by Harry V. L. Hager to the incorporators' attorney, who held the deed in his files until September 29, 1933, when it was duly recorded in the Recorder's office. From the year 1928 to the year 1933 the theatre on the property remained vacant. The storerooms and offices were released and the income received therefrom was used for operating expenses. On September 27, 1933 the petitioner entered into a lease for the theatre with Louis J. Aleman for a period of 45 months, beginning on October 1, 1933. The lease was signed by John Thomas, Jr., president of the petitioner, Harry V. L. Hager, secretary, and bears the seal of the petitioner. On March 29, 1934 the petitioner leased the theatre to Wilmer and Vincent, Inc. for a term commencing April 28, 1934 and ending July 31, 1939. The lease was executed on behalf of the petitioner by John Thomas, Jr., president of the petitioner, and Harry V. L. Hager, secretary, and the seal of the petitioner was affixed. On December 2, 1935 Harry V. L. Hager filed a Bill in Equity in *167 the Court of Common Pleas of Cambria County against the petitioner and all of the grantors set forth in the deed to the petitioner, alleging fraud in the conveyance to the petitioner of the real estate in question and praying for a decree of the court canceling and decreeing void the deed to the petitioner. On April 13, 1936 the defendants in the equity proceedings filed an answer to the bill of complaint denying the allegations of fraud and praying for dismissal of the bill at the cost of the plaintiff. On October 5, 1937 the Court of Common Pleas of Cambria County, Pennsylvania, filed its findings of fact, conclusions of law, and nisi decree. The court refused to cancel the deed on the ground of fraud, and further ordered that the petitioner should issue its corporate stock to its incorporators in the amounts subscribed by them. On February 20, 1934 and again on June 4, 1934 meetings of the incorporators were held for the purpose of drafting the corporation's by-laws, electing its officers, and executing a lease for the theatre. All the stockholders of the petitioner were present in person or by proxy. No official minutes of these meetings were recorded on the books of the *168 petitioner, by-laws were not adopted, and no officers were elected, but a lease with Wilmer and Vincent, Inc. was executed. On December 17, 1937 a meeting of the incorporators of the petitioner was held, at which meeting the petitioner adopted its by-laws and elected John Thomas, Jr., Harry V. L. Hager and Henry C. Hinchman, Jr. as its board of directors. Since December 17, 1937 the petitioner has at all times operated as a corporation through its directors and officers. On February 14, 1938 the Court of Common Pleas in the above equity proceedings directed that the sum of $1,750 be allowed Harry V. L. Hager as compensation for his services rendered as de facto treasurer of the defendant corporation. This sum represented the only amount paid by the petitioner to any of its officers or employees during the period from June 4, 1931 to the present date. On April 21, 1938 certificates for the capital stock of the petitioner were issued to the incorporators of the petitioner in the amounts subscribed thereto, and the capital stock issued in the names of William R. Thomas Estate, Charles B. Thomas Estate, Harry B. Thomas, John Thomas, Jr., Cramer Coal, Coke and Stone Company, and *169 Philip E. Thomas was delivered to Francis C. Martin in trust for the stockholders until the liens of their respective creditors upon the premises conveyed by the incorporators to the petitioner should have been satisfied in record or discharged by operation of law. By lease dated November 5, 1935 the petitioner leased one of the storerooms in the theater property to Joseph Marks for a term commencing November 5, 1935 and ending February 1, 1940. This lease was executed for the petitioner by its president, John Thomas, Jr., and its secretary, Harry V. L. Hager, and its corporate seal affixed. By lease agreement dated November 20, 1939, a new lease agreement with Joseph Marks was executed by the petitioner and signed by its president, Henry C. Hinchman, Jr. and attested by its secretary, John Thomas, Jr., and the seal of the petitioner affixed. Between the years 1933 and 1939, inclusive, the assured named in all policies of insurance written upon the property was 416 Main Street Corporation. For the years from 1913 to 1942 the property was assessed for county tax purposes in the name of Thomas and Hager, who were two individuals known as John Thomas, Sr. and George A. Hager, both *170 of whom died prior to the date of formation of the petitioner on June 4, 1931, and the county tax assessment records have never been changed. The property was assessed for city tax purposes by the assessor for the City of Johnstown, Pennsylvania, from the years 1931 to 1933, inclusive, in the name of Thomas and Hager Estate. For the years 1933 to 1940, inclusive, the theater and office building on the front part of the property was assessed for city tax purposes in the name of 416 Main Street Corporation. For the years 1934 to 1937, inclusive, the dwelling on the rear part of the property was assessed for city tax purposes in the name of Thomas and Hager Estate, and for the years 1938 to 1940, inclusive, in the name of 416 Main Street Corporation. For school tax purposes for the years 1931 to 1940, inclusive, the assessment was identical with the assessments for city tax purposes for such years. From April 30, 1932 until March 12, 1934 an account covering the income from the property deeded to the petitioner was carried in the Johnstown Trust Company, Johnstown, Pennsylvania, in the name of Thomas and Hager. This account was subject to checks drawn signed "Thomas and Hager, per John *171 Thomas, Jr.", and "Thomas and Hager, per Harry Hager." From December 30, 1933 to September 12, 1936 an account covering the income from the property was carried in the United States National Bank, Johnstown, Pennsylvania, in the name of Thomas and Hager, subject to withdrawal by checks signed "Thomas and Hager, by Harry Hager." From September 2, 1936 to the present time, an account covering the income from the property has been carried in the United States National Bank, Johnstown, Pennsylvania, in the name of 416 Main Street Corporation. This account is subject to withdrawal on checks signed by 416 Main Street Corporation by its treasurer, John Thomas, Jr. During the period from June 4, 1931 to March 21, 1938 Harry V. L. Hager made distribution out of the net income received from the property as follows: January 2, 1935
Harry Hager and Auna
Hinchman, division
$600.00
January 30, 1935
Johnstown Thomas
Heirs, division
600.00
April 1, 1936
Charles Thomas, ad-
vance account of
flood
300.00
April 1, 1936
Harry Thomas, advance
account of flood
300.00 During that period John Thomas, Jr., distributed on diverse dates the net income from the property to the individuals *172 in proportion to their ownership thereof. The payments were designated "dividends" and "distributions." On and after March 22, 1938 dividends were paid to the stockholders of the petitioner from time to time to the present time upon action of the board of directors. No balance sheets were prepared for the petitioner prior to December 31, 1938, but thereafter its books showed accounts of income and expenses, from which balances were struck. The record discloses the following additional facts: In 1925 the Thomas owners of the 416 Main Street property received an offer from Joseph T. Kelly and Harry W. Shearer to purchase it for $420,000. It was then discovered that the Hager interests had given the option to Panagotacos. The proceedings to remove the cloud on the title lasted between five and six years. The sale of the property was never consummated. About 1927 another offer to purchase was made by a real estate agent in Johnstown. Following the settlement of the Panagotacos suit in 1931, the petitioner was formed. The primary purpose of its organization was to enable the owners to handle the property advantageously. No officers of the petitioner had been elected on September 27, *173 1933 or March 29, 1934, the dates on which leases were purported to have been executed by the petitioner's officers. On January 24, 1935 a lease for a storeroom in the property was executed by "Thomas & Hager by Harry Hager, Agt." No property except 416 Main Street was ever acquired by the petitioner. On January 28, 1938 the petitioner's officers consulted a certified public accountant in regard to its tax liability. The accountant filed a tentative return for 1938 showing income tax due of about $2,000. The petitioner paid $500, and asked for an extension of time in which to file its amended return. The accountant arranged a conference with an attorney of the office of the collector of internal revenue in Pittsburgh, stated the facts to him, and was advised by him that the petitioner was not a corporation doing business and hence was not required to file a final return. The return showing that no business had been transacted was filed, and the petitioner's $500 first payment of tax was refunded. The collector of internal revenue at Pittsburgh wrote a letter to the petitioner dated May 16, 1938 to that effect. The petitioner filed capital stock tax returns for the fiscal years *174 ending June 30 in 1933, 1934, 1935, 1936 and 1937, and its claim for exemption from such tax was allowed by the Treasury Department on the evidence submitted disclosing that the petitioner was not carrying on or doing business "within the meaning of the law and regulations." In 1941 capital stock taxes for the years 1931 to 1936, inclusive, were assessed against the petitioner by the Commonwealth of Pennsylvania in the sum of $5 per year. No such tax was assessed by that State for the year ending December 31, 1937, but a capital stock tax of $668.65 was assessed for the calendar year 1938, and an income tax of $620.36 was assessed by it for that year. Capital stock and income taxes were assessed by the State against the petitioner for the calendar year 1939. The petitioner filed its Federal income and excess-profits tax returns for the years 1935, 1936 and 1937 on June 15, 1938, showing no business transacted, but its returns for the years 1938 and 1939 showed taxes due in the amounts of $1,350.50 and $1,890.70, respectively. Opinion VAN FOSSAN, Judge: The petitioner and respondent agree on the general principle that only in exceptional cases will the corporate entity be disregarded. *175 The petitioner contends that the case at bar presents such an exception; the respondent advances the contrary. The major issue, therefore, is resolved into one of fact. ; ; ; . The petitioner contends that the purpose dominating its creation and operation was the facilitating of a sale of the Main Street property, - that all other activity was incidental thereto and consequently it was not engaged in business in the taxable years. The record does not sustain this position. Petitioner's announced purpose was "buying, selling, leasing and otherwise dealing in real estate." Testing its activity by its purpose, we are convinced that petitioner was actually engaged in business in all of the taxable years. The record shows that it held title to the property, placed insurance in the corporate name, had a bank account and drew checks in the corporate name, and kept records *176 sufficient for its purposes. It appears that through de facto officers petitioner leased the theater, stores and offices and derived income therefrom. It does not appear that these activities were merely incidental to carrying the property in anticipation of a sale. The corporation was a reality. The fact that it had not issued its certificates of stock, had not adopted by-laws, nor elected a board of directors did not prevent the corporation from functioning. It functioned through de facto officers. The Court of Common Pleas recognized the value and inferentially the activities of Hager as de facto treasurer and ordered the payment of $1,750 for compensation for services rendered. Petitioner made various distributions to its owners and designated them as dividends or distributions. We are convinced that petitioner has failed to demonstrate that its legal entity should be disregarded and conclude that it was actually engaged in business during all of the taxable years. See and cases there cited. We are unable to agree, however, with respondent's action in assessing penalties for negligence *177 as to the years 1935, 1936 and 1937. Section 293, Revenue Acts of 1934 and 1936, provides as follows: (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable. The returns filed for these years represent the collective judgment of petitioner and the collector's office. Respondent concedes that if the collector was fully advised before he made his decision absolving the petitioner from tax and before he advised petitioner to file returns in the form used petitioner's defense would be meritorious. He contends, however, that the collector was not fully advised. We can not concur in respondent's argument that petitioner failed to reveal the facts to the collector. The record and all of the reasonable inferences are to the contrary. In the premises here existing *178 petitioner was not guilty of negligence in making the returns in the form employed and no part of the deficiencies result from negligence. The negligence penalties are accordingly disapproved. Decision will be entered under Rule 50.